UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON RYAN NORTON,

        Petitioner,

v.                                                                  Case Number: 08-13200

JOHN BOYNTON,                                          HON. MARIANNE O. BATTANI

        Respondent.

_____/

**OPINION AND ORDER GRANTING RECONSIDERATION,
VACATING THE OPINION AND JUDGMENT DATED OCTOBER 20, 2010,
DENYING THE HABEAS CORPUS PETITION WITH PREJUDICE,
DENYING A CERTIFICATE OF APPEALABILITY,
AND GRANTING *IN FORMA PAUPERIS* STATUS ON APPEAL**

Petitioner Jason Ryan Norton has appealed the Court's dismissal of his habeas corpus petition without prejudice for failure to exhaust state remedies. Pending before the Court is Petitioner's motion for permission to proceed *in forma pauperis* on appeal. The motion also seeks a certificate of appealability or reconsideration of the Court's dismissal of the petition. The Court has determined that it mistakenly dismissed the habeas petition on exhaustion grounds, but that Petitioner's claims lack substantive merit and do not entitle him to the writ of habeas corpus. Accordingly, the Court **GRANTS** in part and **DENIES** in part Petitioner's motion for permission to appeal *in forma pauperis* [Dkt. #22]. The motion is granted to the extent that the Court is vacating its opinion and judgment dated October 20, 2010, and will adjudicate the merits of Petitioner's habeas claims. The Court will also allow Petitioner to proceed *in forma*

*pauperis* on appeal. The motion is denied as to Petitioner's requests for a certificate of appealability and the writ of habeas corpus.

## I. BACKGROUND

Following a jury trial in Livingston County Circuit Court, Petitioner was convicted of perjury, Mich. Comp. Laws § 750.422, and sentenced to imprisonment for thirty-eight months (three years, two months) to fifteen years. As explained by the state court, Petitioner's conviction and sentence

> arose from his testimony in a prior criminal trial in which he was convicted of driving with a suspended license. During that trial, defendant claimed under oath that a friend had driven him to court on the day of the trial. However, a police officer testified that he had seen defendant driving a vehicle up to the courthouse. The trial court ordered that the friend be brought to the courtroom. The friend confirmed the officer's testimony, stating that defendant had driven to court and that the friend had been a passenger. The prosecutor subsequently charged defendant with perjury, and the present case ensued.

People v. Norton, No. 273087 (Mich. Ct. App. Mar. 18, 2008) (unpublished).

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following five claims:

    I.      The trial court erred in admitting the prior sworn testimony of an unavailable witness in violation of Mr. Norton's right to confront the witnesses against him as explained in Crawford v. Washington, 541 U.S. 36 (2004), and later allowing the prosecution to reopen its proofs and allow the same witness to testify live.

    II.     Mr. Norton was denied his right to a fair trial where a testifying officer gave his opinion about whether Mr. Norton was telling the truth in a prosecution of perjury.

    III.    The trial court erred in assessing court appointed attorney fees in the judgment of sentence despite Mr. Norton's indigence.

    IV.    The trial court erred in stating in the judgment of sentence that Mr. Norton's conviction would be consecutive to subsequent felony conviction but also stated that the sentences would be "concurrent w/ ea other."

    V.    Mr. Norton was denied the effective assistance of his attorney for counsel's failure to preserve the issue in this appeal.

The Michigan Court of Appeals vacated the trial court's assessment of attorney fees and remanded Petitioner's case to the trial court for reconsideration of that issue and to correct a typographical error in the amended judgment of sentence. In all other respects, the Court of Appeals affirmed Petitioner's conviction. See People v. Norton, No. 273087, 2008 WL 723927 (Mich. Ct. App. March 18, 2008) (unpublished). Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but the state supreme court rejected his application because it was not filed within fifty-six days of the lower court's decision, as required by Michigan Court Rule 7.302(C)(2). Petitioner subsequently filed his petition for a writ of habeas corpus.

The habeas petition initially alleged that:

    I.    [T]he [t]rial court erred in admitting the prior sworn testimony of an unavailable witness in violation of Mr. Norton's right to confront the witness against him and later allowing the prosecution to re-open its proofs and allow the same witness to testify live.

    II.    Mr. Norton was denied his right to [a] fair trial where a testifying officer gave his own opinion about whether Mr. Norton was telling the truth.

    III.    . . . Mr. Norton was denied the effective assistance of his attorney for counsel's failure to preserve the issues in this appeal.

    IV.    Mr. Norton's conviction is/or was obtained through [the] use of perjured testimony.

Respondent argued in an answer to the habeas petition that Petitioner did not exhaust state remedies for his fourth claim and that Petitioner still had an available remedy to exhaust. Petitioner subsequently asked for, and was granted, leave to amend his petition to delete his unexhausted fourth claim from the habeas petition.

On October 20, 2010, the Court dismissed the petition without prejudice because Petitioner had not raised any of his claims in a timely application for leave to appeal in the Michigan Supreme Court. The Court also declined to issue a certificate of appealability.

Petitioner now seeks permission to appeal in forma pauperis. He also seeks a certificate of appealability or reconsideration of the opinion and order dismissing his habeas petition.

## II. EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A federal court may not grant habeas corpus relief to a state prisoner unless the prisoner first exhausts his remedies in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). "Ordinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations." Prather v. Rees, 822 F.2d 1418, 1420 (6th Cir. 1987). "This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845 (internal quotation and alteration omitted). Each issue must be presented to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. See Welch v. Burke, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999); see also

Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990).

Petitioner alleges that: (1) the trial court erred in admitting the testimony of an unavailable witness and later allowing that same witness to testify; (2) he was denied his right to a fair trial when a testifying officer gave his opinion about whether Petitioner was telling the truth; and (3) he was denied the effective assistance of counsel. Petitioner raised these three claims in the Michigan Court of Appeals, but when he attempted to raise the claims in the Michigan Supreme Court, his application was rejected as untimely. Therefore, Petitioner has not exhausted state remedies for his claims by fairly presenting them to both of the State's appellate courts.

Technically, Petitioner could return to state court and restart the appellate process by raising his unexhausted claims in a motion for relief from judgment. If the trial court denied his motion, he could appeal the decision to the Michigan Court of Appeals and to the Michigan Supreme Court. The Michigan Court of Appeals, however, has already adjudicated Petitioner's three claims, and a state court ordinarily may not grant relief from judgment when the motion alleges issues that were decided against the defendant in a prior appeal. Mich. Ct. R. 6.508(D)(2). An exception exists when a retroactive change in the law has undermined the prior decision. Id. Petitioner is not relying on a retroactive change in the law. The Court therefore finds that Petitioner does not have an available remedy for exhausting his claims in the Michigan Supreme Court.

> When, as here,
>
> a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted. Martin v. Mitchell,

5

> 280 F.3d 594, 603 (6th Cir. 2002).  While in such situations the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see Coleman v. Thompson, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991), the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review.  Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006).

Pudelski v. Wilson, 576 F.3d 595, 605 (2009), cert. denied, __ U.S. __, 130 S. Ct. 3274 (2010).

To overcome a state procedural default, a habeas petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage carriage of justice."  Coleman, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).

Petitioner alleges that he was unable to file a timely appeal in the Michigan Supreme Court because he was separated from his paper work while on writ to the trial court after the Michigan Court of Appeals remanded his case.  The Court need not determine whether this allegation establishes "cause" for Petitioner's procedural default because his claims lack merit and procedural default is not a jurisdictional limitation. Pudelski, 576 F.3d at 606.  The Court will proceed to address Petitioner's claims on the merits, using the following standard of review.  Because Petitioner is not represented by counsel and has not filed a supporting brief, the Court has looked to his state appellate brief for a fuller understanding of his claims.

### III.  STANDARD OF REVIEW

Habeas petitioners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court determinations on factual issues. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

**IV. DISCUSSION**

**A. Confrontation**

Petitioner alleges that the trial court violated his right of confrontation, as interpreted by the Supreme Court in Crawford, 541 U.S. at 36, by permitting the prosecutor to admit in evidence his friend Steven Harnetz' testimony from Petitioner's

district court case for driving on a suspended license. Petitioner further alleges that the trial court erred by subsequently allowing the prosecutor to re-open her proofs and to question Mr. Harnetz when he was located.

### 1. Supreme Court Precedent

The Confrontation Clause of the Sixth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment. Richardson v. Marsh, 481 U.S. 200, 206 (1987). The Clause "guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses." Id. (citing Pointer v. Texas, 380 U.S. 400, 404 (1965)). Ordinarily, testimonial hearsay evidence may not be introduced against a defendant in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the person. Crawford, 541 U.S. at 68.

### 2. The State Appellate Court's Decision

The Michigan Court of Appeals stated on review of this claim that

> [i]t is difficult for us to discern from the record of the previous trial whether defendant, who was acting as his own counsel, was actually given an opportunity to cross-examine his friend after the trial judge did the lone questioning. Further, it is difficult for us to conclude that the friend was "unavailable" when it appears that he was in a courtroom hallway during the perjury trial.

*Norton*, 2008 WL 723927, at *1. The Court of Appeals went on to say that, even assuming error occurred in allowing the witness's testimony to be read into evidence, it was rendered harmless beyond a reasonable doubt because Petitioner was ultimately permitted the opportunity to exercise his right of confrontation.

As for the accompanying argument that the trial court erred in allowing the in-person testimony of Mr. Harnetz, the Court of Appeals stated that the witness's live testimony was admissible. The Court of Appeals concluded that, to the extent the jury should not have heard pre-confirmation of that testimony, any error was harmless because of the live testimony and the other overwhelming evidence of guilt.

### 3. Analysis

Petitioner's friend, Steven Harnetz, could not be located before Petitioner's perjury trial commenced at 9:00 a.m. on July 18, 2005. Consequently, the trial court held a hearing to determine whether the State had exerted due diligence in attempting to locate Mr. Harnetz. At the conclusion of the hearing, the trial court ruled that the prosecutor had shown due diligence and that she could read Mr. Harnetz' testimony from Petitioner's prior trial into the record at the perjury trial. The testimony was read into the record, and the prosecutor rested her case. The trial was then adjourned for lunch.

After the lunch break, the parties informed the trial court that Mr. Harnetz had been located and that he was present in the courthouse. Over defense counsel's objection, the trial court permitted the prosecutor to re-open her proofs and to produce Mr. Harnetz as a witness. Mr. Harnetz then testified that Petitioner had driven the two of them to Petitioner's prior trial on October 12, 2004, and that he had informed the judge in the prior case that Petitioner had driven to the courthouse.

Because Mr. Harnetz ultimately testified at Petitioner's perjury trial, Petitioner was not denied his right of confrontation. He had an opportunity to confront and cross-examine Mr. Harnetz, although his attorney opted not to ask Harnetz any questions.

9

"[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Crawford, 541 U.S. at 59 n.9.  In other words, the Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Id. Therefore, Petitioner's right of confrontation was not violated.

### 4. The Re-Opening of Proofs

Petitioner contends that the prosecutor should not have been permitted to re-open her proofs to allow Mr. Harnetz to testify in person.  According to Petitioner, the trial court violated Michigan Rule of Evidence 801 by admitting in evidence Mr. Harnetz' prior testimony and his live testimony.

This claim raises only a question of state law.  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (citing Estelle v. McGuire, 502 U.S. 62, 69-70 (1991)).

It was not fundamentally unfair to allow the prosecutor to re-open her proofs, because trial courts in Michigan have discretionary authority to reopen proofs. People v. Shields, 504 N.W.2d 711, 715 (Mich. Ct. App. 1993).  Furthermore, Mr. Harnetz' live testimony at Petitioner's perjury trial was consistent with his prior testimony as read into the record.  Thus, there was no prejudice to Petitioner in having Mr. Harnetz testify in person.  The Court concludes that neither Petitioner's right to due process, nor his right of confrontation, were violated.

### B. The Testifying Officer's Opinion

Petitioner alleges next that he was denied his right to a fair trial when a police officer offered his opinion about whether Petitioner told the truth at his prior trial. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not object to the disputed remark at trial. The Court of Appeals stated that, although state law prohibits a witness from expressing an opinion on the defendants's guilt or innocence of the charged offense, the officer's comments did not prejudice Petitioner, nor warrant reversal of his conviction.

#### 1. Clearly Established Federal Law

Petitioner has not cited any Supreme Court decision that prohibits a prosecution witness from expressing an opinion on the defendant's truthfulness. However, the United States Court of Appeals for the Sixth Circuit has stated in an unpublished opinion that "[a] witness may not give a direct opinion on the defendant's guilt or innocence." United States v. Amacher, No. 90-5126, 1990 WL 197835, at *5 (6th Cir. Dec. 7, 1990) (quoting United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987)). Likewise, under state law, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." People v. Bragdon, 369 N.W.2d 208, 209 (Mich. Ct. App. 1985). And in Cooper v. Sowders, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit concluded that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit stated that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." Cooper, 837 F.2d at 287.

The Sixth Circuit agreed with the dissenting judge in the state court case, who noted that,

> "[t]he police officer was permitted to testify to his own, personal opinion that such evidence as there was against other suspects was insufficient to justify their arrest . . . .   This opinion suggests to the jury the guilt of the accused and the innocence of other suspects."

Id. (quoting Cooper v. Kentucky, No. 84-SC-494-MR, slip op. at 2 (Ky. Feb. 28, 1985) (Liebson, J., dissenting)).

### 2. Application

Police Officer Michael Trenkle testified at Petitioner's perjury trial that he was present at Petitioner's prior trial where Petitioner testified under oath that his friend drove him to the courthouse.  Officer Trenkle testified that Petitioner's testimony was contrary to the officer's observations at the time.  Officer Trenkle went on to say that Petitioner was not telling the truth at his prior trial when he testified that he did not drive to the courthouse.  (Tr. July 18, 2005, at 99-100.)

Because Petitioner was on trial for lying at his prior trial, Officer Trenkle's comment that Petitioner did not tell the truth at his prior trial constituted more than mere testimony on "what he saw and what it meant to him as viewed through the lens of his expertise."  United States v. Johnson, 488 F.3d 690, 699 (6th Cir. 2007).  The testimony impermissibly suggested that Petitioner was guilty of perjury, the charged offense.

Steven Harnetz, however, was Petitioner's friend, and he testified at Petitioner's perjury trial that Petitioner drove to court for his prior trial on driving with a suspended license.  (Id. at 112-13 and 128-29.)  Shawn Ryan, who was the prosecutor at the prior trial, also implicated Petitioner at the perjury trial.  Ms. Ryan testified that Petitioner had

testified in the earlier case that a friend of his had driven him to court that day. Ms. Ryan then explained that the officer in charge of the prior case had notified her that he saw Petitioner drive into the courthouse parking lot that day. Ms. Ryan claimed that she personally did not see Petitioner drive to court that day, but that Officer Trenkle did. (Id. at 88-96.)

Petitioner did not testify at his perjury trial, nor present any witnesses in his behalf, and he had a weak defense to the crime. His attorney merely suggested during closing arguments that Officer Trenkle may have mistaken Steven Harnetz for Petitioner when the two of them drove up to the courthouse for the district court trial and that Steven Harnetz had no plausible reason for allowing Petitioner to drive his car to court that day. Officer Trenkle, however, testified at Petitioner's perjury trial that he recognized Petitioner when Petitioner drove into the courthouse parking lot for his prior trial. Officer Trenkle further testified that the passenger in the vehicle was still sitting in the passenger seat when he (Officer Trenkle) approached the car and asked the passenger to come into the courthouse.

Mr. Harnetz testified at the perjury trial that, on October 12, 2004, he had remained in the car until Officer Trenkle came to get him so that he could testify as to who was driving that day. Harnetz claimed that he had allowed Petitioner to drive on October 12, 2004, because he was unaware of any restrictions placed on Petitioner. In conclusion, the evidence against Petitioner was substantial even in the absence of Officer Trenkle's opinion regarding Petitioner's truthfulness.

This case is distinguishable from Cooper v. Sowders in other ways. In Cooper, the trial court referred to the testifying police officer as an expert witness, a designation

13

that tended to elevate his testimony to that of an insider.  In contrast, Officer Trenkle was not presented to Petitioner's jury as an expert witness, and the trial court charged the jury to judge a police officer's testimony by the same standard as the testimony of any other witness.  (Tr. July 18, 2005, at 149.)

Additionally, Cooper was decided in 1988, long before 28 U.S.C. § 2254(d) was amended to require federal habeas courts to defer to a state court's adjudication of the merits of a petitioner's claim.  "[S]o the Cooper court owed no deference to the state court decision" on the issue.  Dorsey v. Banks, __ F. Supp. 2d __, __, No. 2:09-cv-486, 2010 WL 3825380, at *46 (S.D. Ohio. Sept. 28, 2010).  The Court concludes that Officer Trenkle's remark that Petitioner was not telling the truth at his former trial could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless.  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 77 6 (1946)).

### C.  Trial Counsel

The third and final habeas claim alleges that Petitioner was denied the effective assistance of counsel by his attorney's failure to preserve his other two issues for appeal.  The Michigan Court of Appeals rejected this claim on the basis that Petitioner incurred no prejudice from the alleged error.

"The Sixth Amendment [to the United States Constitution] guarantees criminal defendants the effective assistance of counsel.  That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687

14

(1984)).

To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To demonstrate that counsel's performance prejudiced the defense, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

Petitioner preserved his first claim for appellate review. His trial attorney objected at trial to the use of Steven Harnetz' testimony at Petitioner's prior trial. (Tr. July 18, 2005, at 4-8, 74.) Defense counsel also objected to having the prosecutor produce Mr. Harnetz as a live witness after Harnetz' testimony at the prior trial was read into the record. (Id. at 117-23.) Consequently, Petitioner's claim that his attorney did not preserve habeas claim one for appellate review has no basis in fact.

Petitioner did not preserve his second claim for appellate review by objecting at trial to Officer Trenkle's statement that he thought Petitioner was lying at his prior trial. (Id. at 100.) However, the Court agrees with the Michigan Court of Appeals that the outcome of the proceedings was not affected by Officer Trenkle's testimony. Testimony

15

that Petitioner did not tell the truth at his prior trial was an obvious fact, which was corroborated by prosecutor Shawn Ryan and Petitioner's friend, Steven Harnetz. Therefore, even assuming that defense counsel's performance was deficient due to her failure to object to Officer Trenkle's testimony on Petitioner's truthfulness, the deficient performance did not prejudice Petitioner's defense. The Court therefore concludes that trial counsel was not ineffective.

## V.  CONCLUSION

The state courts' rejection of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent or an unreasonable determination of the facts  Accordingly, the petition for writ of habeas corpus is **DENIED**.

An appeal from the final order in a habeas corpus proceeding may not proceed unless a certificate of appealability (COA) is issued. 28 U.S.C. § 2253(c)(1). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the state court's adjudication of Petitioner's claims was objectively reasonable and that the petition should be denied. Therefore, a COA is

**DENIED**.  Petitioner nevertheless may proceed in forma pauperis on appeal because he was permitted to proceed in forma pauperis in this Court.  Fed. R. App. P. 24(c)(3).

**IT IS SO ORDERED**.

                                                s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

Dated: January 26, 2011


## CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Jason Norton, and Counsel of Record for the Respondent.

                                                s/Bernadette M. Thebolt
                                                Case Manager